IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| IN RE: | ) |
| | ) |
| NUKOTE INTERNATIONAL, INC., | ) Case No. 09-06240 |
| | ) |
| NU-KOTE IMPERIAL, LTD., | ) Case No. 09-06243 |
| | ) |
| INTERNATIONAL COMMUNICATION | ) |
| MATERIALS, INC., | ) Case No. 09-06244 |
| | ) |
| ENVIROSMART, INC., | ) Case No. 09-06245 |
| | ) |
| BLACK CREEK HOLDINGS, LTD | ) Case No. 09-06246 |
| | ) Chapter 11 |
| Debtors. | ) Judge Lundin |
| | ) |
| | ) Joint Administration Requested |
| | ) |

## DECLARATION OF ALAN LOCKWOOD
## IN SUPPORT OF FIRST DAY MOTIONS

I, Alan Lockwood, hereby declare under penalty of perjury that the following statements are true to the best of my knowledge, information and belief:

1. I am Senior Vice-President and General Counsel of Nukote International, Inc., Nu-Kote Imperial, Ltd., International Communication Materials, Inc., Envirosmart, Inc. and Black Creek Holdings, Ltd. ("Nukote" or the "Debtors"), and I have held this position since January of 2004.

2. On June 3, 2009, the Debtors' board of directors authorized the filing of the voluntary petitions in the United States Bankruptcy Court for the Middle District of Tennessee for relief under Chapter 11 of the United States Bankruptcy Code.

3. The bankruptcy petitions were filed on June 3, 2009 (the "Petition Date").

4. I submit this declaration in support of the "First Day" motions in the Debtors' above-captioned Chapter 11 case ("Chapter 11 Case"). Except as otherwise indicated, all facts set forth in this declaration are based upon my personal knowledge, my review of the relevant documents, or my opinion, based upon my experience and knowledge of the Debtors' operations and financial conditions. If I were called upon to testify, I could and would testify competently to the facts set forth herein. I am authorized by the Debtors to submit this declaration.

5. Part I of this declaration describes the Debtors' businesses and the circumstances surrounding the filing of the Chapter 11 petitions. Part II sets forth the relevant facts in support of the Debtors' First Day Motions filed concurrently herewith.

## I. PART I: BACKGROUND

### A. The Chapter 11 Filing

6. Pursuant to Bankruptcy Code §§ 1107(a) and 1108, the Debtor is operating its business and managing its property as debtor-in-possession.

7. No trustee or examiner has been appointed and no official committee of creditors or equity interest holders has yet been established in the Debtor's bankruptcy case.

### B. General Background and Events Leading To Bankruptcy

8. The Debtors together with their non-debtor affiliates (collectively, the "Company") are independent manufacturers and/or distributors of products including ink jet and laser toner cartridges; cartridge refill kits; ribbons, inkrollers, and lift-off tapes; copier toner; and thermal fax ribbons for use in a variety of models of impact and non-impact printing mechanisms. More specifically, the Debtors' remanufactured ink jet and laser toner cartridge operations are centered in Mexico; toner manufacturing is centered in Connellsville, PA; and coated media/fax ribbon/correctible ribbon/OEM ink jet operations are centered in Rochester,

NY. The Debtors, directly or indirectly, employ approximately 1,100 persons worldwide, and the Debtors sell their products primarily in the United States, Canada, Mexico and Europe.

9. Debtor Nukote International, Inc., through its subsidiary and affiliates, has multiple locations in several states in the United States and also in Mexico. Debtors operate their collective businesses from the following locations: executive and corporate headquarters located in Plano, Texas; administrative offices and coating operations located in Rochester, New York; a distribution warehouse located in Franklin, Tennessee; accounting and customer service operations in Bardstown, Kentucky; toner manufacturing in Connellsville, PA; a maquilladora manufacturing operation in Monterrey, Mexico; a third party distribution center in Ventura, CA; and distribution/sales/customer service office for European operations in Membury, UK.

10. As of the quarterly period ended March 31, 2009, the Debtors, including their non-debtor affiliates, had assets with a book value of approximately $86 million and approximately $79 million in liabilities.

## II. PART II: FIRST DAY MOTIONS AND APPLICATIONS

11. Along with its Petitions, the Debtors filed certain motions for expedited relief (the "First Day Motions").

12. Generally speaking, the relief requested in the First Day Motions is necessary to facilitate continuation of Debtors' operations of its businesses with little or no disruption. In my opinion, I believe that an expedited resolution of the issues raised in the First Day Motions is crucial to the maintenance of the Debtors' normal business operations.

13. Specific factual information in support of each of the First Day Motions is provided below as well as in the various applications and motions.

### A. Cash Collateral.

Expedited relief is necessary to allow the Debtors' business operations to continue uninterrupted. Without the immediate use of cash collateral, Debtors will be unable to operate their business, retain or pay employees, maintain their assets, attempt to reorganize their affairs, or perform many of the tasks which are necessary to maximize the value of their assets. I believe that the Debtors' business operations and reorganization effort will suffer immediate and irreparable harm if cash collateral usage is not immediately considered and granted. In connection with their operations, Debtors incur daily expenses for purchase of products, equipment and services from third parties, payroll, employee expenses, professionals, insurance, rent, commissions, utilities, telephone, supplies, taxes and other operational and capital costs. Without the immediate use of cash collateral, Debtors will be unable to produce product, retain or pay employees, maintain their assets, attempt to reorganize their affairs, or perform many of the tasks which are necessary to maximize the value of their assets. Cash is critical to the continued uninterrupted operations of the Debtors' business.

### B. Existing Bank Accounts and Cash Management System.

14. In the ordinary course of business and prior to the Petition Date, Debtors have used a centralized cash management system through which they receive payments and deposits, pay payroll and other business obligations, and generally fund business operations (the "Accounts").

15. In my opinion, closing the Debtors' Accounts and opening new Accounts would materially and unnecessarily disrupt the Debtors' business operations and could impair the Debtors' efforts to continue normal receipt/disbursement processes at a critical stage of these cases.

C.   **Employee Wages and Benefits**

16.   The Debtors have filed an Expedited Motion for an Order Authorizing Payment of Prepetition Compensation, Employee Reimbursements and Withholding Taxes.

17.   The Debtors, directly or indirectly, employ approximately 1,100 full-time hourly and salaried employees (collectively, the "Employees"). Such Employees include management, operational, administrative and office employees. The Employees perform a variety of critical functions for the Debtors' operations, including manufacturing, sales, management, accounting, and administration. The Employees' skills and their knowledge and understanding of the Debtors' infrastructure and operations, as well as their relationships with clients, vendors, and other third parties, are essential to the Debtors' continuing operations and to its ability to reorganize.

18.   The Debtors generate one payroll two weeks in arrears for certain salaried and management Employees on the 15th and 30th of every month (or the prior business day if the 15th or 30th falls on a weekend). The portion of the prepetition wages attributable to the payroll for salaried and management Employees' is approximately $52,000.00 arising from checks that were cut on May 29, 2009 but have not yet cleared. Further, with regard to the salaried and management Employees' payroll, three (3) days of the pay period for which these employees would expect to be paid on June 15, 2009 fall prepetition, June 1 – June 3, 2009. This portion of the salaried and management Employees payroll is approximately $97,500.00. The Debtors generate an additional payroll, a week in arrears, for other salaried and some hourly Employees on a weekly basis. That payroll would ordinarily be funded today, June 3, 2009, and these Employees would be paid on June 4, 2009. The amount of that payroll is approximately $67,000.00. In total, the prepetition wages, benefits and deductions detailed above that are the

subject of this Motion thus total approximately $217,000.00; however no employee will receive in excess of $10,950.00.

19. Emergency consideration of the Debtors' motion is necessary to avoid any disruption or delay in paying the Employee wages and expenses, which, as stated above, would severely impair the Debtors' ability to successfully achieve its goals through chapter 11.

### D. Adequate Assurance for Utilities

20. The Debtors have filed an Expedited Motion Pursuant to Section 366 of the Bankruptcy Code for Entry of Interim and Final Order: (A) Prohibiting Utilities from Altering, Refusing or Discontinuing Services to, or Discriminating Against, the Debtors on Account of Prepetition Invoices; (B) Determining that the Utilities are Adequately Assured of Future Payment; (C) Establishing Procedures for Determining Requests for Additional Assurance; and (D) Permitting Utility Companies to Opt-Out of the Established Adequate Assurance Procedures (the "Utilities Procedures Motion").

21. The Debtors currently use electric, gas, water, sewer, telephone, data transmission, cellular phone, trash/garbage removal and other similar services at their locations and facilities, which utility services are provided several different utility service providers (the "Utility Companies"). A list of the Utility Companies is attached to the Utility Procedures Motion. The Debtors' Utility Companies provide utility services related to the day-to-day operation of the Debtors' businesses.

22. Uninterrupted utility service is essential to the Debtors' ongoing operations. The Debtors can not continue to manufacture and distribute product or otherwise continue normal business operations without utility service. Should any Utility Company refuse or discontinue service, even for a brief period, the Debtors would be forced to cease the operation of each affected facility, resulting in substantial disruption of operations and loss of revenue. Even the

temporary discontinuation of utility services at any of the Debtors' facilities could irreparably harm the Debtors' businesses and jeopardize the Debtors' reorganization efforts.

23. The Debtors intend to pay its postpetition obligations to the Utility Companies timely.

24. The Utility Companies will not be prejudiced by the continuation of service to the Debtors because the Debtors propose to: (i) provide adequate assurance deposits, if requested, by a Utility Company; (ii) establish procedures for the Court to determine the adequacy of the proposed adequate assurance, if not satisfactory to a Utility Company; and (ii) establish procedures for a Utility Company to opt-out of the adequate assurance procedures.

**E.     Joint Administration**

25. The Debtors have filed an expedited motion for joint administration of the five (5) Debtors' cases. I believe that joint administration of these cases is necessary to ease the administrative burden on the Court and all parties in interest, and to avoid the significant expense and confusion that could result from having multiple duplicate pleadings filed in duplicate cases.

26. Further declarant says not.

/s/ Alan Lockwood

Dated: June 3, 2009

Respectfully submitted,

**WRIGHT GINSBERG BRUSILOW P.C.**

By: /s/ Frank J. Wright
Frank J. Wright
Paul B. Geilich
C. Ashley Ellis
600 Signature Place
14755 Preston Road
Dallas, TX 75254
Telephone: (972) 788-1600
Facsimile: (972) 239-0138
Email: fwright@wgblawfirm.com;
pgeilich@wgblawfirm.com;
aellis@wgblawfirm.com

and

**HARWELL HOWARD HYNE
GABBERT & MANNER, P.C.**

By: /s/ Barbara D. Holmes
Craig V. Gabbert, Jr.
Barbara D. Holmes
315 Deaderick Street, Suite 1800
Nashville, TN 37238-1800
Telephone: (615) 256-0500
Facsimile: (615) 251-1058
Email: cvg or bdh@h3gm.com

**PROPOSED ATTORNEYS
FOR DEBTORS**

416185-1