# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | | |
|---|---|---|
| IN RE: | ) | Case No. 3:09-06240 |
| | ) | Chapter 11 |
| NUKOTE INTERNATIONAL, INC., et al., | ) | Judge Lundin |
| | ) | |
| Debtors. | ) | JOINTLY ADMINISTERED |

## RESPONSE IN OPPOSITION TO UNITED STATES TRUSTEE'S MOTION TO DISMISS, OR IN THE ALTERNATIVE, TO CONVERT CASE TO CHAPTER 7

The NI Creditors' Trust (the "Trust") files this response in opposition to the United States Trustee's *Motion to Dismiss, or in the Alternative, to Convert Case to Chapter* 7 (Docket No. 784). The case should not be dismissed or converted because such dismissal or conversion would not be in the best interests of creditors. If the Court determines that conversion is in the best interests of creditors, then the Trust respectfully requests the Court to keep the main case open until the Trust can prosecute the avoidance actions for the benefit of the priority wage claimants, unsecured trade creditors, and unsecured claimants ("Beneficiaries of the Trust") pursuant to the First Amended Joint Plan of Reorganization, Docket No. 404, ¶ 9.3).

### BACKGROUND

1. On June 3, 2009, Nukote International, Inc., Nukote Imperial, Ltd., International Communication Materials, Inc., Envirosmart, Inc., and Black Creek Holdings, Ltd., (collectively, the "Debtors") filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

2. On or about June 12, 2009, the United States Trustee's Office formed the Official Committee of Unsecured Creditors (the "Committee").

3. On January 4, 2010, the Bankruptcy Court for the Middle District of

Tennessee, Nashville Division confirmed the Debtors' First Amended Joint Plan of Reorganization (the "Plan").

4. Pursuant to the confirmed Plan, the Trust was created to hold certain assets defined by the Plan as the "Trust Assets" for the benefit of the holders of Class 6, Class 9, and Class 10 Allowed Unsecured Claims (as that term is defined in the Plan) to, among other things, pursue Avoidance Actions[1].

5. Pursuant to the confirmed Plan, the avoidance actions were conveyed to the Trust for the benefit of the Beneficiaries of the Trust. *See* Plan, Docket No. 404, ¶¶ 8.3 ("On the Effective Date, the Avoidance Actions shall be transferred to the Trust"), 2.69.

6. Pursuant to the confirmed Plan, the Trust reviewed the Debtors' records and identified the recipients of preferential transfers. This involved hundreds of hours of intensive document collection, claims analysis, review of financial documents, and working with the Debtors to obtain accurate account information.

7. Once the Trust identified recipients of preferential transfers, it pursued collection efforts prior to commencing litigation. As a result of these efforts, the Trust collected nearly $500,000 prior to filing any avoidance action complaints. The Trust used these proceeds, in part, to pay the fees of counsel for the Debtors' terminated employees (which comprised a portion of the terminated employees' claims).

8. Certain creditors either did not respond to the Trust's collection efforts or refused to accept settlements proposed by the Trust. The Trust accordingly initiated forty-two (42) avoidance actions against various defendants who received payments during the preference period. The avoidance actions demand approximately $2.5 million.

---

[1] The term "Avoidance Actions" was defined by the Plan as "any claim or Cause of Action belonging to the Debtors and arising under the Bankruptcy Code including, but not limited to, §§ 544, 547, 548 and 550."

9. As a result of the litigation, counsel for the Trust has drafted and served discovery, conferred with creditors with respect to case matters and issues, settled some cases, and has begun to engage in settlement negotiations with a significant number of other creditors.

10. In recent months, both the Trust and counsel for the Trust have unsuccessfully attempted to make contact with the Debtors. It has come to the Trust's attention that the Debtors business operations have ceased. To the best of the Trust's knowledge, no distributions have been made for many months. The Trust believes that the Debtors' UST fees are far less than $40,000 because of the lack of distributions made by the Debtors.

## LAW AND ANALYSIS

11. Section 112(b) of the Bankruptcy Code states:

> [A]bsent unusual circumstances specifically identified by the court that establish that the requested conversion or dismissal is not in the best interests of creditors and the estate, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, if the movant establishes cause.

12. It is recognized that maximizing property available to satisfy creditors is an underlying policy of Chapter 11, *Bank of America Nat'l Trust Assn. v. 203 North LaSalle Street Partnership*, 526 U.S. 434, 453 (1999), and further that a Chapter 11 case should not be converted or dismissed if continuing the case promotes this goal, *see* Coller at ¶ 1112.04[4][a] at 111-25.

13. Factors considered in determining whether dismissal or conversion is in the best interests of creditors or the estate include:

   a. Whether all of the creditors have consented;

  b. Whether dismissal would result in a prejudicial delay in payment to creditors; and

  c. Whether a preference claim is pending.

*In re Turpen*, 244 B.R. 431, 434 (B.A.P. 8th Cir. 2000); *In re Mechanical Maintenance, Inc.*, 128 B.R. 382, 386-87 (E.D. Penn. 1991).

 14. In this case, the "best interest of creditors" factors support denial of the motion to dismiss or convert. First, the major creditors in the case have not consented. There has been no consent because no creditor would benefit from dismissal or conversion of the case.

 15. Second, dismissal or conversion would result in delay in payment to creditors. In fact, it would result in no payment to creditors. The Debtors have no business operations and apparently have no intent or ability to resume operations. CIT, the largest secured creditor in the case, has taken control over the Debtors' assets and presumably is attempting to liquidate the collateral. If this case is dismissed or converted, Beneficiaries of the Trust will have no recourse (notwithstanding CIT's efforts, it will have a sizeable unsecured deficiency claim) and preference transferees will have kept payments rightfully owed to such unsecured creditors. *See In re GPA Technical Consultants, Inc.*, 106 B.R. 139, 142 (Bankr. S.D. Ohio 1989) ("[I]t will not necessarily be in the best interest of creditors and the estate to dismiss the case because doing so might result in a windfall in favor of those who received preferential transfers[.]")*, citing In re Amarex, Inc.*, 74 B.R. 378, 381 (Bankr. W.D. Ok. 1987). In short, permitting the Trust to pursue the avoidance actions is the only hope of recovery for the Beneficiaries of the Trust.

 16. Third, significant preference litigation is pending. Pursuant to the confirmed

4

Case 3:09-bk-06240 Doc 788 Filed 05/31/11 Entered 05/31/11 16:53:45 Desc Main
Document Page 4 of 6

Plan, the proceeds of the avoidance actions will benefit the Beneficiaries of the Trust. Unless the Debtors' litigation against Office Depot is successful, the avoidance action litigation will be the Beneficiaries of the Trust only hope for even partial repayment of their claims. Dismissal or conversion is therefore inappropriate. *In re L.N. Scott Co., Inc.*, 13 B.R. 387, 388 (Bankr. E.D. Pa. 1981) (dismissal of Chapter 11 case not proper where all of debtor's tangible assets had been sold and only remaining assets were four causes of action: "In the instant case, favorable results in the four (4) adversary proceedings…would result in an influx of assets to the estate. The proceeds could then be distributed through a Chapter 11 plan."); *See In re Sherwood*, No. 04-50584, 2008 WL 2074098 at *3 (Bankr. W.D. Mo. 2008) (denying motion to dismiss in part because preference actions "may be forthcoming").

17.     If the Court disagrees with the Trust and determines that the case should be converted, the Trust respectfully requests the Court to authorize the Trust to prosecute the avoidance actions before the main case is closed. The Plan and Trust Agreement transferred the avoidance actions into the Trust and specifically defined the avoidance actions as part of the "Trust Assets." *See* Plan, Docket No. 404, ¶¶ 8.3 ("On the Effective Date, the Avoidance Actions shall be transferred to the Trust"), 2.69. In the event of a conversion, the avoidance actions are not assets of the estate that would be administered by a Chapter 7 trustee. A Chapter 7 trustee would presumably liquidate the non-avoidance action assets it could recover and then attempt to close the case. If the avoidance actions have not reached final judgment, closure of the main case would deprive the Court of jurisdiction to finalize remaining avoidance actions. This occurrence would have resulted in a tremendous expenditure of time, energy, and resources to gain little to nothing for the

Beneficiaries of the Trust. To avoid this scenario, the Trust respectfully requests that if conversion is ordered, the Court also order that the main case shall not be closed until there is a final order entered in each of the avoidance actions.

**WHEREFORE**, the Trust respectfully requests the Court to deny the United States Trustee's motion to dismiss and/or convert, and grant the Trust such other relief as is appropriate.

Respectfully submitted,

/s/ Griffin S. Dunham
Griffin S. Dunham (gsd@mglaw.net)
Joseph A. Kelly (jak@mglaw.net)
MGLAW, PLLC
2525 West End Avenue, Suite 1475
Nashville, Tennessee 37203
615.846.8000
Fax: 615.846.9000

*Attorneys for the NI Creditors' Trust*

## CERTIFICATE OF SERVICE

I hereby certify that on May 31, 2011, a true and correct copy of the foregoing was electronically served upon all parties accepting electronic service in this case.

/s/ Griffin S. Dunham
Griffin S. Dunham